C. S. PIERCE CO. v. BELCHER. .

(Circuit Court of Appeals, First Circuit.   January 6, 1917.)

No. 1228.

PATENTS ⬤═328—INFRINGEMENT—SHOE FORM.
    The Legg patent, No. 946,235, for a shoe form, is limited to the par-
ticular combination described, and as so construed *held* not infringed.
    Morton, District Judge, dissenting.

Appeal from the District Court of the United States for the Dis-
trict of Massachusetts; Frederick Dodge, Judge.

Suit in equity by the C. S. Pierce Company against George E.
Belcher.   Decree for defendant, and complainant appeals.   Affirmed.

· The following is the opinion of Dodge, Circuit Judge, in the court be-
low:

The defendant is charged in this bill with infringing claims 4 to 7, inclu-
sive, of United States patent No. 946,235, issued January 11, 1910, to Alfred
G. Legg, for an improvement in shoe forms, which patent is now owned by the
plaintiff company.

The alleged infringing device, marked "Plaintiff's Exhibit No. 4," has been
made and sold by the defendant under United States patent No. 1,118,582, is-
sued November 24, 1914, to Louis W. Reinhardt, assignor to the defendant, for
a shoe form.

Legg says in his specification that:

"Shoe forms as now made, which are adapted to fill the shoe and thus
keep the fore part, sides and heel distended in substantially the same position
which they occupy when the shoe is on the foot of the wearer are so far as
known to me so constructed that they may be slipped into the shoe and then
mechanically adjusted so as to fill the shoe and press the fore part, sides and
heel outwardly and maintain them in a distended position. This adjustment is
effected by the operator mechanically and it is not only more or less compli-
cated and expensive in construction but is liable to be so used as to apply
too great a pressure to the interior of the shoe to the injury thereof.

"By the employment of my invention I provide an automatically adjustable
shoe form which may be readily inserted in the shoe and which will expand
sufficiently to fill the shoe and maintain it in proper form."

The shoe last or form which he goes on to describe has a fore part intended
to fill the forward and shank portions of the shoe. This, he says, is preferably
a shell, formed from a material which may be molded to shape. As shown in
the principal figures of his drawings, it is hollow, but a modified form is
also shown wherein the fore part may be either solid or hollow, or partly
solid, and the statement is made that the invention is not limited to a hollow
form or to one of any precise shape. It is in the remaining rearwardly pro-
jecting portion, which is to extend into the heel of the shoe, and the method
of its attachment to the fore·part, that the essence of the invention may be
said to consist.

The patent refers to this rearwardly projecting portion as a "yoke-shaped
piece," to be preferably made from a strip of metal of yoke shape, and to
·comprise a curved rearward portion and two legs. The curved rearward por-
tion is to extend into the heel of the shoe for the purpose of keeping the latter
distended. Its attachment to the fore part of the last is effected by means of a
lengthwise slot in the free end of each leg, through which is to pass a stud on
each side of the fore part of the form, at the rear portion thereof, having a

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
    239 F.—34

riveted head on the outside of the form, projecting through the shell inwardly a sufficient distance to permit the slotted end of the leg to slide upon it; and also having, at its inner end, a relatively large head which serves to keep the leg in position, and a spring, preferably a spiral spring, bent first around the stud so as to be held in engagement therewith, then bent downwardly in preferably two convolutions, then upwardly until its other end engages with an offset portion of the leg at the inner end thereof. The tendency of these springs, acting upon the ends of each leg, is to force the curved portion of the yoke-shaped piece against the inside of the heel portion of the shoe when the form is in position therein; while the yoke-shaped portion may be swung on the stud as a pivot, so as to have its bearing at the back of the shoe, either near the top of the counter, or close to the sole, or in any desired intermediate position. The slots and studs serve to guide the forward or rearward motion of the yoke-shaped piece, as the spring against which its legs bear is compressed or expanded.

Modified forms of the invention are shown, in one of which legs of the yoke-shaped piece enter slots or recesses in the fore part of the last, containing spiral springs at the bottom, and provided with pins which project across them through slots in the legs. In the other form, the studs and springs are carried in two legs or projections extending rearwardly from the fore part of the last, at each of its sides; and in this form the position of the spring is preferably reversed so as to bring its convolutions uppermost when the form is in position.

The scope of the invention is in controversy. From the inventor's statements above quoted, it might be gathered that he supposed himself the first to provide a shoe form capable of quick insertion and automatic adjustment by reason of its power of expansion after being inserted; as opposed to forms which require mechanical adjustment after insertion. The plaintiff has hardly claimed as much as this, but it has insisted that none of the prior art patents "show the combination of elements which has resulted in a successful commercial article," as the patent in suit is shown to have resulted.

The evidence shows without dispute that the plaintiff company, for many years a large producer of shoe forms, began to make forms according to the patent in suit in 1910, the year of its issue; that such forms were less than 20 per cent. of its output for that year; but that in 1911 the proportion increased to 30 per cent., in 1912 to 55 per cent., and in 1913 to 75 per cent., though it charged 5 per cent. a pair more for the patented than for any other of its forms. Both its total output and the percentage of patented forms made have been somewhat less since 1914, in which year the defendant began making and selling the forms now complained of, under the Reinhardt patent mentioned above.

But whatever the plaintiff's success in marketing the patented device, it is difficult, in view of the prior art, to find anything patentably new in the combination it embodies, so far as function or mode of operation are concerned. Two prior patents have been particularly relied on by the defendant, i. e., No. 649,373, issued May 3, 1900, to Thurell, and No. 711,025, issued October, 1902, to Tyler. Both described shoe forms consisting of a fore part and a rearwardly projecting portion for extension into the heel of the shoe, neither needs mechanical adjustment after being placed in position; both are capable of ready insertion in the shoe, and of automatic expansion and adjustment after being inserted; nor does it appear that the patented device is materially less complicated or expansible in construction than either. In both there is a pivot or hinge connection between the fore part and the heel portion, enabling the latter to be swung upwardly and forwardly relatively to the former; and in both there is also a spring so disposed between the two members as to make the form compressible and expansible lengthwise. While in the Tyler device both members are solid, and are provided with sockets wherein the hinge and spring connections are disposed, in the Thurell device the fore part is a shell, adjacent the inner surface whereof the pivot and spring con-

nection with the heel member are arranged. To substitute for the U-shaped part of Thurell's heel member a yoke-shaped metallic strip, like that of the patent, would involve only a mechanical change; whatever view be taken regarding the different means of connection between the legs of the heel member and the fore part of the form.

The patent in suit has in all seven claims, whereof the four now sued on are the broadest in terms; the three others being by their terms more expressly limited to the specific construction shown. In view of all that had been accomplished in the prior art, I think the utmost that any of the claims can be taken to cover is the construction which the patent describes. This conclusion prevents the defendant's device from being held an infringement, unless it must be regarded as having adopted the patented construction without any but colorable variations, not amounting to substantial differences.

The defendant's heel member and fore part are both of "shell" form. Extensions or tongues from each of them overlap, those from the heel member passing inside those from the fore part. On each side of the form a short link connects the two overlapping extensions, pivoted to each respectively near its end. Each link is adjacent the inner surface of the extension belonging to the heel member, below which its lower end projects enough to be there pivoted to the extension from the fore part. The links, rocked on their pivots, permit the heel part to move toward or from the fore part, while holding the two parts in connection with each other. Coiled springs also adjacent the inner surface of each extension from the heel part, in the rear of each link, are engaged at one end with the link, and at the other with the extension from the heel part, so as to be compressed when the form is shortened and to force the heel part backward when the pressure is removed.

The movement of the heel member relatively to the fore part is thus guided, not by pins in straight slots, as in the patent, but by the movement of the links around their respective pivots. It is said in the Reinhardt patent that "the mechanism for effecting this adjustment is materially different both in principle and construction from the pin and slot constructions of the form now in use." On the whole, I must regard this statement as well founded. I think the defendant's means for securing flexible and expansive connection between the two parts of the form differ no less substantially from those used in the patent than from the means used in any of the prior devices; and that they cannot properly be held covered by the claims in suit, notwithstanding the language therein employed for the purpose of making them cover as much as possible beyond the construction which Legg describes.

This conclusion requires dismissal of the bill, and there may be a decree accordingly.

George P. Dike, of Boston, Mass., for appellant.
Ellis Spear, Jr., of Boston, Mass., for appellee.

Before BINGHAM, Circuit Judge, and ALDRICH and MORTON, District Judges.

ALDRICH, District Judge. This case has to do with devices for holding shoes in shape while in nonuse, the idea being to keep the shoe substantially in the shape produced by wearing, and to accomplish this through means creating outward and extension pressure.

Although, upon hearing below, the validity of the plaintiff's patent, known as the Legg patent, was not drawn directly in question, it is quite apparent that the view of the District Court was that it was difficult to find anything patentable and new in the combination which the patentee described; yet that court was not called upon to do so,

and did not undertake to pass upon the question of the validity of the plaintiff's patent.

Leaving the question of patentable invention undecided was entirely consistent with the theory of the defense, which was, in view of the state of the art, that the Legg patent should be construed as confining itself to the device which the patentee described, with the provisional contention that, if the Legg claims were given the breadth of scope claimed by the plaintiff, the patent would be void. The District Court reached the conclusion that the claims of the Legg patent, from 4 to 7, inclusive, which were the only ones in issue, should be limited to the particular combination described, and, being so limited, that the defendant's device did not infringe; and, as a consequence, all questions of the validity of the Legg patent became entirely immaterial.

The question of infringement thus becoming the only question in issue, it depended largely, if not altogether, upon the construction of the claims in the Legg patent, and the question of construction was reasonably and necessarily influenced by the prior state of the art.

It is very clear that the Legg patent did not hold such a relation to the idea of preserving the shape of shoes in nonuse as, under the rules of liberal interpretation, would justify a broad construction of its claims. In short, it was not in any reasonable or substantial sense a pioneer patent, because there were other patents and devices which had in view the idea of holding shoes in such shape or form as had been created by the wearer. The District Court refers to the earlier patents of Tyler and Thurell, with the observation that both described shoe forms with mechanical adjustments and means for automatic expansion.

At most, the patentee in the Legg patent, as he explains it in his specification, relies upon novel features of his adjustable shoe form as improvements, and he particularly describes his mechanical means for creating and guiding the expansive and contracting movement.

The learned judge presiding in the District Court considered and elaborated the state of the art, and made a careful analysis of the elements of both the plaintiff's device and that of the defendant's alleged infringing form and combination, with the result of finding and holding, in effect, that the defendant's means for securing flexible and expansive connection between the two parts of his form—which were combined in accordance with the Reinhardt patent of November 24, 1914—differed no less substantially from those in the patent than from the means used in devices prior to both the Legg and Reinhardt patents. That court's appreciation of the prior art is so clearly expressed, and the elements mechanically combined and arranged in both the device of the plaintiff and that of the defendant are so carefully analyzed and stated by that court, that we need not cover such ground in detail at the necessary expense of reiteration; and this is so because, if the state of the art was such as to justify a construction limiting Legg to the combination which he described, and we think it was, the conclusion plainly and unmistakably results from

an examination of the two devices that the defendant's combination does not infringe.

It is our conclusion that the result reached in the court below was right; and—

The decree of the District Court is affirmed, with costs of this court.

MORTON, District Judge (dissenting). The problem was to make a shoe form which would support the shoe throughout the entire length, which could be easily inserted into the shoe by bending and compressing without unduly stretching the shoe, and which, having been inserted, held the shoe in shape under a slight tension. The art had advanced to a point where forms were best made hollow, so that it was necessary to provide the qualities above named in a hollow form. This had never been done prior to Legg's invention.

Only three prior patents are referred to. As far back as 1885, Rogers had made a hollow shoe form having toe and heel pieces which were hinged together. Apparently it was inadequate and never went into extensive use. It had to be forced into place, and it had no capacity to adjust itself longitudinally to the shoe. Thurell, in 1900, with the Rogers device before him, and with the same problem in mind, did not combine heel and toe pieces. His form consists only of a toe piece kept in place by a wire bent to conform to the inside of the heel; it has no heel piece at all in the ordinary meaning of the words, and seems to have had no practical value. Two years later, in 1902, Tyler got up a wooden form, having sliding hinges and a separate spring between them for forcing apart the heel and toe pieces. Tyler's hinges and spring were inserted in recesses in the wood of the heel and toe pieces. His construction is wholly inapplicable to a hollow form, and his mechanism is radically different from that of the patentee. He evidently saw the need, but was unable to supply it in a commercial form.

This was, so far as appears, the entire development of the art, when, in 1907, Legg made the invention here in question, in which he united hollow heel and toe pieces by hinges of simple and practical construction which allowed the two parts of the form to be bent and compressed, and which were so arranged as to force them apart by spring tension when the form had been placed in the shoe. There is no evidence of any earlier hinge combining flexibility and extensibility, nor of any shoe form in which such a hinge had been used, nor of any flexible and extensible shoe form of commercial value. The Legg patent admittedly describes the first commercially successful article of its particular kind. Legg made the advance which achieved that result, and he made it where others had failed.

Legg's device was apparently just what the trade was waiting for. The evidence of prompt adoption and use by the public is usually strong and convincing. Evidence of commercial value is, of course, often exaggerated, and patentees are apt to puff their inventions in arguing infringement cases. At the same time, when the facts of un-

successful prior efforts and of prompt and widespread public adoption of the patented device are satisfactorily proved, they constitute weighty evidence of invention. I do not think that evidence is overthrown by other facts in this case.

In the circumstances, I think the Legg patent entitled to a more liberal construction than that given to it by the majority opinion. Reinhardt, who had been employed by the complainant, adopted Legg's idea and proceeded to embody it in a structure which is clearly within the specification and claims of the Legg patent, and is, in my opinion, nothing but a mechanical equivalent for the Legg device. To say that Reinhardt's structure, which the defendant is making, differs no more from Legg's than Legg's did from those preceding it, is, it seems to me, to lose sight of what the Legg invention really was.

For these reasons I am unable to concur in the opinion of the court.